IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY SIMMONS, #319-614 | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION NO. JKB-15-1447 |
| CHARLOTTE ZIES,[1] Case Manager<br>LT. BRADLEY A. WILT | : | |
| | : | |
| Defendants | | |

## MEMORANDUM

Plaintiff Anthony Simmons ("Simmons"), a Maryland Division of Correction ("DOC") prisoner housed at North Branch Correctional Institution in Cumberland ("NBCI"), seeks injunctive relief mandating his removal from segregation confinement and transfer to Patuxent Institution ("Patuxent"). The case is before the court on defendants' unopposed[2] Motion to Dismiss or, in the Alternative, for Summary Judgment. ECF No. 14. No hearing is needed to resolve the pending motion. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion, construed as a motion for summary judgment, will be GRANTED.

**Plaintiff's Allegations**

Simmons alleges he has been housed at NBCI for more than four years, and that NBCI personnel have refused to transfer him to Patuxent, where he has been accepted into a treatment

---

[1] The Clerk shall amend the docket to reflect the full and complete spelling of defendants' names.

[2] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on November 18, 2015, Simmons was notified that defendants Wilt and Zies had filed a dispositive motion, the granting of which could result in the dismissal of his action. ECF 15. He was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.* Simmons failed to respond.

program.[3]  ECF No. 1 at p. 2.  He further claims he was wrongfully placed on disciplinary segregation for having a weapon, which he needed for protection from gangs, and states that he never threatened injury to staff.  *Id.* at pp. 2-3.  He complains that after finishing his disciplinary segregation sentence he has been housed on administrative segregation without cause, in retaliation for a complaint he made against NBCI staff, and because Lt. Wilt believes he is dangerous.  *Id.* at p. 2.

### Defendants' Response

Wilt has submitted a declaration stating that he took no action to hold Simmons on segregation beyond the expiration of his disciplinary segregation sentence.  ECF 14-3, ¶ 5.  Similarly, Zies has submitted a declaration indicating she has not impeded Simmons's progress through segregation, and that according to correctional protocol, Simmons's status is evaluated at regular intervals by a team of correctional personnel.  ECF No. 14-4, ¶ 5.

Defendants argue that the record provides no support regarding Simmons's allegations of threats from gang members, but does show that Simmons's disciplinary history is poor and has resulted in his placement on segregation for a substantial period of time.  ECF 14-2 at pp. 49 -51.  He was convicted of rules violations in four incidents in 2012 (*id.* at p. 49), including an incident involving the making of a homemade weapon.[4]  *Id*. at pp. 67-77.  Relevant here, on October 10, 2013, he verbally threatened harm against a correctional officer.  *Id*. at 52-66.

Defendants have provided monthly Case Management Assignment Sheets that reflect the monthly reviews by a team of correctional officials.  *Id*. at pp.  2-18.  These reports, which

---

[3] Patuxent is a maximum security correctional facility within Maryland's Department of Public Safety and Correctional Services ("DPSCS") that offers clinic programs for prisoners with severe character disorders who typically have a history of substance dependency as well as those with other mental health issues.  *See* https://www.dpscs.state.md.us/agencies/patuxent.shtml.

[4] Simmons also was convicted of rules violations in two incidents in 2010.  *Id*. at p. 49.

commence May 27, 2014, include an investigative report stating that there is "reason to believe" that Simmons would create a risk to the security and safety of the institution if returned to general population. *Id*. at p. 18. Simmons was given a Notice of Assignment to Administrative Segregation with a statement of reasons. *Id*. at p. 17. From May 2014 through February 3, 2015, neither Wilt nor Zies participated in Case Management committee review of Simmons's administrative segregation status.[5] *Id*. at pp. 5-16. Neither had individual responsibility for the monthly determination of whether to retain Simmons on administrative segregation.

Simmons refused to participate in his monthly administrative segregation assignment reviews in February, March, and April of 2015. *Id*. at pp. 25-26. On January 6, 2015, the security review recommended that his security status be increased from Maximum I to Maximum II. *Id*. at p. 26.

Defendants provide information showing that Simmons was referred for treatment at Patuxent on July 29, 2015, nearly three months after he filed this lawsuit. ECF 14-2 at p. 21. Examination of the DOC's Inmate Locator service shows that as of within date, he remains at NBCI.

Defendants argue that Simmons's allegations are not cognizable and, thus, they are entitled to summary judgment on the merits.[6]

### Standard of Review

Defendants' motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled

---

[5] Zies was involved with the Case Management committee for February 26, 2015. *Id.*

[6] Defendants also argue that Simmons did not complete administrative exhaustion of his allegations prior to bringing suit in federal court. ECF 14-5 at ¶ 3. Although it appears that Simmons may not have filed administrative remedy procedure ("ARP") grievances, defendants have not shown that classification matters are subject to the ARP process. Thus, the court will address the merits of Simmons's claims.

in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Fisher v. Md. Dept. of Pub. Safety & Corr. Servs.*, Civ. No. JFM-10-0206, 2010 WL 2732334, at *3, 2010 U.S. Dist. LEXIS 68772, at *8-10 (D. Md. July 8, 2010).

4

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist.

LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d).  Indeed, he has not responded in any way to the dispositive motion filed by Zies and Wilt.  Thus, the Court is satisfied that it is appropriate to address the defendants' motion as one for summary judgment.

Summary judgment is governed by Rule 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:  By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Analysis**

Simmons's primary complaint centers on his claim that he should not be housed on administrative segregation now that his term of disciplinary segregation has been completed, but instead should be transferred to Patuxent. Defendants' arguments to the contrary find support both as to the law and the facts as applied to this case.

A classification decision or a transfer from one prison facility to another typically does not implicate a protected liberty interest or state a claim under § 1983. *See Meachum v. Fano*, 427 U.S. 270 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987). Indeed, prisoners have no liberty interest in being housed in any particular facility, *see Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983), and are not entitled as a matter of constitutional law to be housed at any particular security classification or prison. *See Slezack v. Evatt*, 21 F. 3d 590, 595 (4th Cir. 1994).

Simmons's suggestion that his placement on administrative segregation is retaliatory based on his litigation history potentially states an actionable claim,[7] but is not supported in light of his adjustment history, noted above. Likewise, his claim that his possession of a weapon was justified because he feared gang retaliation finds no support in the record.[8] Simmons is provided monthly review with regard to his continued placement on segregation and typically refuses to participate in those reviews. Further, the individuals he names as responsible for his continued segregation placement played a limited role in those reviews.

---

[7] Retaliation, though it is not expressly referenced in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). In order to prevail on a claim of retaliation, Simmons "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Where there is no impairment of a plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim. *See ACLU of Maryland, Inc. v. Wicomico County, Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

[8] There is no showing that corrections personnel failed to protect Simmons from a known risk of harm, or that they were aware that he was concerned about gang activity.

What is apparent is that Simmons's conduct – not defendants' alleged retaliatory animus – is the controlling factor leading to his security classification, inability to move toward placement at Patuxent, and continued placement on segregation.

## Failure to Protect

Simmons implies that correctional personnel are ignoring the danger posed by gang members. To the extent that this claim is construed as a failure to protect claim, it fails.

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, __ F.3d __, 2016 WL1056091*2 (4th Cir. 2016) citing *Farmer*, 511 U.S. at 825). Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id*. "[N]ot every injury suffered by a prisoner at the hands of another 'translates into constitutional liability for prison officials responsible for the victim's safety.'" *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (citation omitted). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 2016 WL at *3.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury'" or substantial risk of either kind of injury. *Danser v. Stansberry*, 772 F.3d 340, 346 – 47 (4th Cir. 2014). The objective inquiry requires this Court to "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 2016 WL at *5.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id*. at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder my conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 2016 WL at *3.

In *Pressly v. Hutto*, 816 F.2d 977 (4th Cir. 1987), a Virginia inmate sued correctional officers for failing to protect him from attack by another inmate. The Court of Appeals held that the Eighth Amendment protects a convicted inmate from physical harm at the hands of fellow inmates resulting from the deliberate or callous indifference of prison officials to a specific known risk of such harm. *Id.* at 979. Nonetheless, complaints that do not allege deliberate indifference to a specific known risk of harm fail to state a claim under § 1983. *See Ruefly v. Landon*, 825 F.2d 792, 793 (4th Cir. 1987).

Simmons's claim that he is in danger is speculative at best. Defendants are entitled to summary judgment on this claim.

### Conclusion

Defendants' dispositive motion will be granted. A separate order follows.

Date: <u>April 26, 2016</u>                            _____/s/_____
                                                                James K. Bredar
                                                                United States District Judge